## Pittsburgh, C., C. & St. L. Ry. Co. v. Agnes G. Piper.

1. RAILROADS—*Failure to Lower Gates at Street Crossings.*—A traveler on the highway who sees a train about to pass in front of him, has all the warning which the gates at the crossing could give if properly closed.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Reversed, with a finding of facts. Opinion filed February 21, 1902.

This was an action to recover for injury sustained by the overturning of a buggy, due to the action of a frightened and unmanageable horse, which fright was occasioned by the escape of steam from a locomotive operated by the Transit Company—the alleged connection of the defendant with the injury being that it, in connection with other companies, had failed, as was the custom, prior to the passing of a train over the crossing, to lower the gates thereat; whereby plaintiff had no warning of the coming of the locomotive, and driving said horse, approached so near the crossing that her horse was frightened and became unmanageable as aforesaid.

Plaintiff testified:

"On the afternoon of the 1st day of September, 1893, I started out for a drive, and we were going to Englewood, Mrs. Wiggins and her baby and I, and we had not gone very far before we came to the railroad crossing at 39th street and Western-avenue Boulevard. It was a single-top buggy, one-horse top buggy, one-seated. The top was up. There was a long freight train crossing on one of the further tracks from us. We were facing the south. We intended to go south to Englewood. We were on the north side of the tracks. We were driving south, but there was a freight train crossing; it was a very long train, and it was already across the track, about half way across. We waited for the train to pass on. We stopped right north of the railroad tracks, right close to the track. The horse's head was almost right to the north track. There were gates there, but they were not lowered. They were standing up straight. I had driven over or been over that cross-

ing before several times.  The gates were there before, once before, when I passed; they were down when we were out driving, because there were trains passing back and forth. When we stopped there was an engine came up on one of the tracks nearest to us, and they never rang a bell or blew a whistle, or gave us any warning whatever, until they let steam off, came out the side of the engine and frightened the horse, so that he made a break to dash right across, and I was strong enough to hold him back, and he reared on his hind feet, and I had presence of mind to pull the left hand line and that pulled his head; as he came down again he turned his head around, and then I had no more control of him.  He made a break when he saw an opening; he turned around so short that he upset the buggy.

This engine came from behind us; kind of back of us.  It was going toward the stock yards.  It came from the northwest—more north than west.  We were driving on the boulevard; the tracks cross diagonally from northwest to southeast.  There is a boulevard for carriages, and then west of that there is a wagon road on Western avenue for wagons and funerals.  Between the wagon road and the boulevard there is a park, with trees and shrubbery and grass.  The way the tracks come you could not see to the northwest unless you would put your head outside of the buggy and look back.  And there were trees and shrubbery in the park, and grass.  I could not see across the park.  We had been standing there five or ten minutes before the locomotive came by, I should judge."

GEORGE WILLARD, attorney for appellant.

M. V. GILBERT and PLINY B. SMITH, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

It is not claimed that appellant had anything to do with the operation of the engine, the escaping steam from which frightened appellee's horse.  What is claimed is, that the crossing gates not being lowered, appellee had no warning that the locomotive was coming, and thus went where her horse was frightened.

Appellee did not go upon the crossing; she saw a freight train passing and stopped; this freight train was about half way over when she came to the crossing, and there she

remained from five to ten minutes before the locomotive went by.

Appellee does not testify, and there is no evidence, that she would not have gone and remained where she did had the gates been down. Gates are lowered to prevent driving upon the track; they do not obstruct the view nor shut out noise.

The obligation in this case to lower gates so as to prevent people going upon the tracks rested upon usage; had appellee driven upon the tracks, and in consequence been injured, the failure to lower the gates might be said to have led to her injury. Being, as she was, outside of the railroad track and grounds, her injury by the action of the Transit Company, not a party to this suit, was not a result of the failure of the defendant to lower the crossing gates; this failure was neither the proximate nor any cause of the frightening of her horse by the escape of steam from a locomotive over which it had no control.

She was warned by the plain view of the passing freight train not to go upon the tracks, and she did not. A traveler on the highway seeing a train passing, or about to pass in front of him, has all the warning gates can give. Theobald v. Railroad, 75 Ill. App. 208; Bjork v. Railroad, 85 Id. 269; Railroad v. Sutherland, 88 Id. 295.

There is no evidence tending to show that lowered gates would have induced her to take or refrain from any other action.

The judgment of the Circuit Court is reversed without remanding, and with a finding of facts.